**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Donald Edward ROSS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 14, 2004.
Filed July 13, 2004.
Reargument Denied Sept. 15, 2004.

and International Procedure Act is the only permissible result.).

John Ciroli, Jr., Pittsburgh, for appellant.

Michael W. Steily, Deputy Dist. Atty., and Francesco L. Nepa, Asst. Dist. Atty., for Com., appellee.

Before: HUDOCK, LALLY–GREEN and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 Donald Ross appeals from the judgment of sentence imposing an aggregate term of imprisonment of one year less one day to two years less two days followed by twenty-one months probation entered on three criminal complaints. A jury convicted Appellant of recklessly endangering another person ("REAP") and criminal mischief, a judge sitting without a jury convicted him of simple assault and harassment, and he pled guilty to harassment, stalking and criminal mischief. We affirm.

¶ 2 The following facts are relevant to our review. On the evening of January 26, 2002, Floyd Peterson was descending the stairwell of his fiancée's apartment building when he looked out of a window and observed a bald man emerge from beneath Mr. Peterson's vehicle with a yellow object in his hand. The vehicle was parked across a well-lit street about thirty feet away from the window where Mr. Peterson first observed the man. Mr. Peterson thought that the man probably had dropped the yellow object and was in the process of retrieving it when he noticed him.

¶ 3 Thereafter, Mr. Peterson entered his vehicle and attempted to operate it. After traveling a short distance, however, Mr. Peterson realized that his brakes had failed completely. Mr. Peterson immediately placed the gearshift into the park position, stopped the vehicle, and examined its undercarriage. His initial examination revealed that brake fluid had splattered on the ground and undercarriage, and upon closer inspection, Mr. Peterson determined that the brake line had been cut.

¶ 4 After the incident, Mr. Peterson's fiancée, Stacy Berron showed Mr. Peterson a photograph of Appellant and Mr. Peterson identified Appellant as the man he observed emerge from beneath the automobile. Appellant is Ms. Berron's former boyfriend. In the days prior to the incident, Appellant had voiced his displeasure with Ms. Berron for dating Mr. Peterson, and he had been seen loitering around Ms. Berron's apartment complex even though he lived more than ten miles away.

¶ 5 Appellant was arrested and charged at CC # 200204205 with REAP and criminal mischief for the events that occurred on January 26, 2002. As a result of different offenses committed against Ms. Berron and Mr. Peterson, Appellant was charged separately at CC # 200113275 with two counts of simple assault and one count of harassment and criminal mischief, and at CC # 200208030, with harassment, stalking and criminal mischief.

¶ 6 On August 5, 2002, following a nonjury trial, Appellant was convicted of simple assault and harassment at CC # 200113275. The next day, a jury convicted Appellant of REAP and summary criminal mischief at CC # 200204205. On October 16, 2002, Appellant pled guilty to harassment, stalking and criminal mischief. On that date, the trial court sentenced Appellant at all criminal complaints as follows: At CC # 200103275, Appellant was sentenced to six months time served for the simple assault and twenty-one months consecutive probation; at CC # 200204205, the court imposed a term of imprisonment of one year less one day to two years less two days for REAP and no further penalty for summary criminal mischief; at CC # 200208030, the court imposed three years probation for harassment and stalking and no further penalty

for the criminal mischief offense. The trial court fashioned the sentence so that the probation commenced upon Appellant's release from prison. No post-sentence motions were filed. This appeal followed.[1]

¶ 7 On appeal, Appellant first levels the claim that trial counsel was ineffective for failing to object, during the jury trial of CC # 200204205, to the trial court's admission of evidence relating to Appellant's prior conviction for simple assault and stalking at CC # 200113275 because the court had not imposed sentence for those offenses. Next, Appellant argues that trial counsel was ineffective for failing to preserve a weight-of-the-evidence issue pursuant to Pa.R.Crim.P. 607. Finally, Appellant assails the trial court's decision to admit evidence of Appellant's prior convictions that were more than ten years old.

■ ¶ 8 At the outset, we must first determine whether we can address Appellant's claims assailing trial counsel's effectiveness. In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court stated, "[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 67–68, 813 A.2d at 739. However, for the following reasons, we conclude that *Grant* does not preclude our review of Appellant's ineffectiveness claims herein.

¶ 9 In *Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003), we recognized an exception to the general rule espoused in *Grant* where the short duration of the judgment of sentence would preclude collateral review. The defendant in *Salisbury* was convicted of driving with a DUI-related suspended license and sentenced to ninety days imprisonment. The defendant

appealed from the judgment of sentence alleging that his trial counsel provided ineffective assistance. Faced with applying the general rule articulated in *Grant*, this Court addressed the defendant's ineffective-assistance-of-counsel claim on direct appeal because strict application of *Grant* would have denied the defendant of his appellate rights. We reasoned that since a petitioner must be serving a sentence of imprisonment, probation, or parole to be eligible for relief under 42 Pa.C.S. 9543(a)(1), the defendant would have been precluded from raising his claim in a collateral petition under the PCRA due to the short duration of the ninety-day term of imprisonment.

¶ 10 While we acknowledge that Appellant's aggregate judgment of sentence includes two significant periods of consecutive probation, probation was not imposed upon the convictions at CC # 200204205, the matter that relates to Appellant's ineffectiveness claims. Indeed, the only sentence imposed upon Appellant for his conviction under CC # 200204205 was a one year less one day to two years less two days term of imprisonment. Considering that sentence was imposed on October 16, 2002, the longest term Appellant may serve for this conviction extends to October 14, 2004. Hence, Appellant's ineffectiveness claim likely will not be cognizable under the PCRA, and in accordance with *Salisbury, supra*, we will address the merits of his ineffectiveness claim on direct appeal. *Compare Commonwealth v. Simmons*, 2004 PA Super 71, 846 A.2d 142 (review of ineffectiveness claim inappropriate on direct appeal where sentence of eleven and one-half to twenty three months incarceration followed by probation afforded opportunity to challenge

---

1. Although the appeal is from the judgment of sentence imposed on all three convictions, the issues raised relate only to the January 26, 2002 incident that yielded the charges at CC # 200204205.

counsel's effectiveness on collateral review).

■ ¶ 11 Appellant's first ineffective assistance of counsel claim concerns trial counsel's failure to object, during the CC# 200204205 jury trial, to evidence admitted regarding Appellant's prior conviction for simple assault at CC # 200113275. According to Appellant, evidence of the earlier conviction was inadmissible because the court had not yet imposed sentence on the simple assault conviction.

¶ 12 Our well-established standard of review is as follows:

> To prevail on an [ineffective assistance of counsel] claim, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Commonwealth v. Manuel*, 844 A.2d 1, 7 (Pa.Super.2004).

¶ 13 During the August 6, 2002 jury trial, Appellant's witness, Joann King, testified regarding Appellant's reputation for being a peaceful, truthful, and law-abiding citizen. On cross-examination, the Commonwealth asked Ms. King if she knew about specific instances of Appellant's conduct, including the offenses that led to the previous day's conviction.[2]

¶ 14 Appellant argues that under *Commonwealth v. Zapata*, 455 Pa. 205, 314 A.2d 299 (1974), the evidence of his prior conviction was inadmissible to rebut Ms. King's testimony relating to Appellant's reputation for good character because the court had not imposed sentence upon that conviction. Accordingly, Appellant posits that his trial counsel provided ineffective assistance by failing to object to the introduction of the convictions upon which sentence had not yet been pronounced. We agree that Appellant's underlying claim has arguable merit.

¶ 15 The issue in *Zapata* concerned whether trial counsel was ineffective for revealing his client's two convictions for voluntary manslaughter when the client had not yet been sentenced on those offenses and counsel had no reasonable basis to reveal the information on direct examination since direct questioning of a defendant-witness about prior crimes is prohibited. Apparently, trial counsel introduced his client's convictions on direct examination under the mistaken belief that the Commonwealth could admit evidence of the unsentenced convictions in its case-in-chief. According to our Supreme Court, the trial counsel's unsolicited introduction of his client's unsettled convictions was error. The Court reasoned that "until sentence is pronounced[,] the issue is not necessarily closed," *id.* at 212, 314 A.2d at 303, and reference to the conviction would impermissibly prejudice the defendant if the conviction was reversed prior to the imposition of sentence. The Court also

2. Pa.R.E. 405 provides, in pertinent part, as follows (emphasis added):

    (a) Reputation Evidence

      In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. **On cross-examination of the reputation witness, inquiry is allowable into specific instances of conduct probative of the character trait in question,** except that in criminal cases inquiry into allegations of other criminal misconduct of the accused not resulting in conviction is not permissible.

noted, "[T]he rule ... must apply without exception to situations where the witness whose credibility is under attack is the criminal defendant in that particular trial." *Id.* at 210–11, 314 A.2d at 302.

¶ 16 The Supreme Court implicitly extended this rule in *Commonwealth v. Doswell*, 533 Pa. 228, 621 A.2d 104 (1993), to bar reference to a non-party witness's conviction which had not yet been reduced to sentence. In that case, the Commonwealth sought to impeach a defense witness's credibility pursuant to Pa.R.E. 609 with evidence that he had been convicted of receiving stolen property, a *crimen falsi* offense. Relying upon *Zapata,* and without distinguishing between a defendant's testimony and that of a non-party, the Court concluded that trial counsel provided ineffective assistance in failing to object to the Commonwealth's use of the witness's conviction because sentence had not yet been imposed. However, the majority of the cases invoke *Zapata* to protect a testifying defendant witness from his own unsentenced convictions.

¶ 17 Although we have not uncovered a case that addresses the use of a defendant's unsentenced convictions to impeach a non-party reputation-witness's testimony pursuant to Pa.R.E. 405(a), we believe that *Zapata* is applicable in this situation. As Appellant artfully argued, "Rule 405 does not exist in a vacuum. [It] should be read in conjunction with [*Zapata*] to ensure that a defendant is not prejudiced by convictions, which are not final ...." Appellant's brief at 15. The prejudice that our Supreme Court sought to alleviate in *Zapata* will occur regardless whether a defendant's unsettled convictions are introduced to impeach his testimony directly or introduced to impeach a reputation witness pursuant to Rule 405(a). In either case, where the trial court has not imposed sentence upon a defendant's conviction, "the

issue [is] not necessarily closed," and a reference to the conviction would "injure the [defendant] in the estimation of the jury" if it later was reversed by the trial court. *Id.* at 212, 314 A.2d at 303.

¶ 18 Herein, Appellant's trial counsel failed to object to the introduction of Appellant's unsentenced convictions, which the Commonwealth used to impeach Ms. King's reputation testimony. Had the trial court later vacated these convictions, the references would have prejudiced Appellant impermissibly in the eyes of the jury. This is the exact prejudice which the *Zapata* Court sought to avoid.

¶ 19 Although we believe that Appellant's underlying claim arguably is meritorious, Appellant's ineffectiveness claim fails, nevertheless, because Appellant cannot satisfy the prejudice prong of the ineffective assistance standard. That is, there is not a reasonable probability that the jury would have acquitted Appellant but for trial counsel's omission.

¶ 20 We note that the Commonwealth's reference to the previous day's conviction was but one of Appellant's several convictions that properly were admitted into evidence. In fact, during its cross-examination of Ms. King, the Commonwealth also inquired into Appellant's three burglary convictions and, in rebuttal, the Commonwealth produced Appellant's entire criminal history, revealing three convictions of retail theft and harassment and a criminal mischief conviction. Under these circumstances, we agree with the Commonwealth that its reference to the unsentenced assault conviction was benign and cumulative of the other properly admitted convictions. Thus, as Appellant cannot satisfy the prejudice prong of the ineffectiveness standard, his claim fails. *See Commonwealth v. Dent,* 837 A.2d 571 (Pa.Super.2003) (absent showing of prejudice, ineffectiveness claim properly dismissed).

¶ 21 Next, Appellant argues that trial counsel provided ineffective assistance by failing to preserve a claim that the jury verdict was against the weight of the evidence by raising it orally or in writing before the trial court pursuant to Pa. R.Crim.P. 607. Generally, under *Grant*, a claim assailing the effectiveness of trial counsel for failing to raise and preserve a weight of the evidence claim is not subject to review on direct appeal. *See Commonwealth v. Burkett*, 830 A.2d 1034 (Pa.Super.2003) (ineffectiveness claim asserting trial counsel's failure to raise claim that verdict was against weight of evidence dismissed without prejudice under *Grant* where eighteen-to-thirty-six month sentence was followed by five years of probation). However, as noted *supra*, since the issue in the case at bar implicates only the conviction at CC# 200204205, Appellant's ineffectiveness claim would not be cognizable under the PCRA because of the short duration of the sentence imposed on that conviction. *See Salisbury, supra.*

¶ 22 The determination of the weight of the evidence exclusively is within the province of the fact-finder, who may believe all, part, or none of the evidence. *Commonwealth v. McCloskey*, 835 A.2d 801 (Pa.Super.2003). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super.2003) (citation omitted). In this regard, "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994) (internal quotations omitted). While appellate review of a weight of the evidence claim normally involves examining the trial court's exer-

cise of discretion in its review of the fact-finder's determinations, *see Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000), instantly, we must test the merits of Appellant's claim without the benefit of a trial court's opinion.

¶ 23 Appellant's weight of the evidence claim focuses on Mr. Peterson's identification testimony. Specifically, Appellant contends that "[t]he evidence at trial was contradictory and did not establish identification of [Appellant] as being the person who was under Mr. Peterson's vehicle and who allegedly cut [Mr. Peterson's] brake lines." Appellant's brief at 22. After reviewing Appellant's assertion and the evidentiary record, we conclude that the claim lacks arguable merit.

¶ 24 First, Appellant asserts that Mr. Peterson's identification of Appellant is tainted because it occurred at night from a distance of thirty feet and followed a period in which Mr. Peterson had been consuming alcohol. We disagree with Appellant's assessment of the evidence.

¶ 25 Initially, we note Mr. Peterson testified that he only drank approximately one beer before the incident. A reasonable jury could not conclude that a single beer was enough to render Mr. Peterson incapable of identifying Appellant as the perpetrator. Similarly, although the incident occurred at night and Mr. Peterson viewed Appellant from a distance of thirty feet, the evidence reveals that the area was well lit. Indeed, the streetlights provided sufficient lighting for Mr. Peterson to give a detailed description of Appellant's appearance, including his clothing. Further, Ms. Berron testified that the street across from her apartment was illuminated and that she could see Mr. Peterson's vehicle clearly from the window where Mr. Peterson first noticed Appellant. She also testified that in the four years that she had lived in her apartment she often looked out

of the same window and could recognize people on the street, even at night. As Ms. Berron's testimony supports Mr. Peterson's identification, we conclude that the jury's determination that Mr. Peterson identified Appellant positively was not against the weight of the evidence.

¶ 26 Next, Appellant argues that Mr. Peterson gave contradictory testimony when he initially testified that he observed a baldheaded man emerge from beneath his car, but then later testified that the perpetrator was wearing a hat at the time of the incident. Mr. Peterson testified as follows:

Q. [Y]ou said earlier that the person you saw was bald; right?

A. Right.

. . . .

Q. At the same time you are saying he had a cap covering his entire head?

A. It was on his head. I didn't say it was all over your [sic] head like you were saying. He had the hat on his head.

Q. Covering his head?

A. On top of his head.

. . . .

A. If you have been around black folks you know what their hair looks like. He was baldheaded even though he had a cap on his head.

N.T. Trial, 8/6/02, at 36, 37. As the foregoing passage illustrates, Mr. Peterson clarified the apparent contradiction in his testimony. Essentially, he could determine that Appellant was bald despite the fact that Appellant had been wearing a hat. As the jury was free to accept or reject any part of the testimony, we do not find that its reliance upon Mr. Peterson's explanation was against the weight of the evidence.

¶ 27 In addition, Appellant asserts that Mr. Peterson's testimony is tainted because Mr. Peterson confused the facts of this case with another instance involving Appellant. This issue implicates the following testimony:

Q. And it was when you first started using your brakes you realized it [sic] didn't work.

A. Yes.

Q. How did you feel when you realized they didn't work?

A. Hold it a minute. Excuse me. I know that was the -- okay, that was the first time. I didn't report that one. The second time -

Q. We are talking about this incident.

A. Oh, okay, yeah. I didn't report the first one.

Q. We are only talking about this incident.

A. It happened twice.

*Id.* at 31. Following a sidebar conference, wherein Appellant's counsel rejected the trial court's offer to make a cautionary statement to the jury, the Commonwealth admonished Mr. Peterson outside of the jury and instructed him to limit his testimony to the January 26, 2002 incident. Thereafter, testimony resumed as follows:

Q. Mr. Peterson, you are still under oath. On this date, January 26 of this year, when you got into your car after you saw the defendant come out from beneath of your car, how far did you drive before you realized something was wrong with your brakes?

A. After I pulled out, there was a light at the corner. I got out, was going towards the corner, hit the brakes, the [warning] lights went off, and that is not too far.

*Id.* at 33.

¶ 28 We believe that Mr. Peterson's momentary confusion was harmless. The

jury was able to discern the events that transpired on the evening of January 26, 2002, based on the totality of Mr. Peterson's testimony, the majority of which was corroborated by Ms. Berron's subsequent testimony. Further, the Commonwealth cured Mr. Peterson's improper reference to prior events by twice correcting the witness in open court and by explicitly couching its ensuing questions in terms that limited testimony to the events of January 26, 2002. Hence, the evidence was not against the weight of the evidence, and trial counsel did not provide constitutionally ineffective assistance for failing to raise this meritless claim. *See Commonwealth v. Johonoson,* 2004 PA Super 17, 844 A.2d 556.

■ ¶ 29 Appellant's final contention is that the trial court erred in admitting, over objection, a stipulation listing all of Appellant's convictions since July 6, 1973, to impeach Ms. King's testimony that Appellant had a reputation for good character in his community. Specifically, Appellant contends that the evidence relating to his three prior burglary convictions was inadmissible because the convictions were greater than ten years old. Again, we disagree.

¶ 30 The admissibility of evidence lies within the trial court's discretion, and absent a clear abuse of that discretion, we must affirm the trial court's decision. *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75 (2004). "Evidence is admissible if it . . . tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact, and its probative value outweighs the likelihood of unfair prejudice." *Id.* at 88 (citations omitted).

¶ 31 The stipulation relating to Appellant's prior convictions clearly was admissible to impeach Ms. King's testimony. As we explained in *Commonwealth v. Nellom,* 388 Pa.Super. 314, 565 A.2d 770, 775 (1989):

A defendant who presents character testimony runs certain risks, however, character witnesses, like other witnesses, can be subjected to cross-examination. *See Commonwealth v. Scott,* 496 Pa. 188, 195, 436 A.2d 607, 611 (1981). Such cross-examination may include questions regarding the defendant's prior convictions for crimes involving the relevant character trait. *See id; see also Commonwealth v. Vander Weele,* 356 Pa.Super. 152, 157–58, 514 A.2d 189, 191 (1986). The purpose of this type of impeachment is to test the accuracy and completeness of the witness's knowledge of the defendant's reputation. *Commonwealth v. Scott, supra* at 192, 436 A.2d at 609; *see also Commonwealth v. Peterkin,* 511 Pa. 299, 318, 513 A.2d 373, 382–83 (1986) ("a character witness may be cross-examined regarding his knowledge of particular acts of misconduct by the defendant to test the accuracy of his testimony and the standard by which he measures reputation."); *Commonwealth v. Hammond,* 308 Pa.Super. 139, 149, 454 A.2d 60, 65 (1982); *Commonwealth v. King,* 287 Pa.Super. 105, 108, 429 A.2d 1121, 1122–23 (1981).

¶ 32 Indeed, prior to trial, the trial court warned Appellant that it would permit the Commonwealth to introduce its stipulation if Appellant opened the door with his own character evidence. Against the advice of trial counsel, Appellant nevertheless insisted on presenting Ms. King's reputation testimony. In light of this warning, the trial court's decision to admit the stipulation was not an abuse of discretion.

■ ¶ 33 This, however, does not end our inquiry, as the crux of Appellant's argument is that pursuant to Pa.R.E. 609,

the three burglary convictions were inadmissible without advance written notice to the defendant because they were more than ten years old. We disagree that Rule 609 precluded the Commonwealth from introducing evidence of the three burglary convictions absent written notice. The rule provides:

**Impeachment by evidence of conviction of crime**

(a) General Rule

For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.

(b) Time Limit

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

¶ 34 Appellant cannot invoke Rule 609 to bar the dated burglary convictions because the rule does not apply herein. By its own terms, Rule 609 only applies to evidence "that the **witness** has been convicted of a crime" involving a *crimen falsi* offense. *Id.* (emphasis added). The rule has no bearing on the case at bar where Appellant's convictions were introduced to test

the reliability of his character witness's testimony pursuant to Rule 405(a).

¶ 35 Hence, we hold that the trial court did not commit an abuse of discretion by concluding that the probative value of Appellant's prior convictions outweighed their prejudicial effect on the jury.

¶ 36 Judgment of sentence affirmed.