J-S76021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BARSHAY REQWAN DUNBAR, | : | |
| | : | |
| Appellant. | : | No. 481 WDA 2018 |

Appeal from the Judgment of Sentence, January 2, 2018,
in the Court of Common Pleas of Cambria County,
Criminal Division at No(s): CP-11-CR-0000100-2017.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 29, 2019**

Barshay Dunbar appeals from his judgment of sentence after a jury convicted him of two counts of trafficking in individuals, five counts each of promoting prostitution, criminal use of a communication facility, and three counts of possession with intent to deliver a controlled substance.[1]  The court sentenced Dunbar to 13 to 26 years in prison.  On appeal, Dunbar presents a variety of legal challenges.  After careful review, we affirm.

The trial court aptly summarized the relevant facts as follows:

> On October 28, 2016, the Cambria County's Department of Emergency Services ("Dispatch") received a call from Dianna Jones, Manager ("Manager"), Super 8 Motel ("Motel"), 627 Solomon Road, Johnstown, [Pennsylvania]. She asked for a Richland Police officer to return her call, and Officer [Scott] Conahan called her.  She told Officer

_____

[1] 18 Pa.C.S.A. §§ 3011(a)(1) & (2); 5902(b)(1), (3), (4), (5) & (8); 7512(a), 35 P.S. §§ 780-113(A)(30) & (16).

Conahan that she believed a prostitution ring was being operated out of Room 307 and directed him to *Backpage.com* where the services were being advertised. Officer Conahan visited the website and confirmed what the Manager had told him. The advertisement contained photos of several females, one of which appeared to be a minor. Officer Conahan apprised [Sergeant Jerry] Martin of the situation. Concerned with the age of one of the females, Sergeant Martin, Officer Conahan, and Detective [Brett] Hinterliter went to the Motel to investigate. At the Motel, the Manager pointed out individuals getting into a vehicle and starting to drive away as the parties she believed to be involved in the prostitution ring. Officers were able to stop the vehicle before it left the Motel's parking lot. There were three occupants in the vehicle: [Dunbar] was in the passenger seat; Tiffany Simms ("Simms") was driving; and Autumn Yocum ("Yocum") was in the back seat.

Sergeant Martin asked Yocum to exit the vehicle and directed her to the back of the car so [he] could talk to her. Sergeant Martin informed Yocum that they were investigating a potential prostitution ring. Yocum then admitted that she and Simms were prostituting themselves, and that [Dunbar] was responsible for [setting] the appointments, the services to be performed and the prices to charge. As Sergeant Martin approached Detective Hinterliter to relay what he had learned from Yocum, [Detective] Hinterliter told him that he saw a pack of Newport cigarettes thrown out of the car window prior to the car coming to a stop. He retrieved the pack of cigarettes and when he opened it, he found a bundle of heroin. [Dunbar] was arrested, and the parties were transported to the police station for questioning. Prior to transportation, however, Sergeant Martin saw several cell phones in the vehicle. Simms told Sergeant Martin the cell phones belonged to [Dunbar].

Trial Court Opinion, 7/10/18, at 2-3 (footnotes omitted). Upon further investigation, Dunbar was charged with the aforementioned offenses.

After a two-day jury trial, Dunbar was found guilty on all charges. On January 2, 2018, the trial court sentenced Dunbar to an aggregate sentence of 13-26 years' incarceration.

Dunbar filed post-trial motions which the trial court denied. This timely appeal follows. Both Dunbar and the trial court have complied with Pa.R.A.P. 1925.

Dunbar raises seven issues for our review. We have reordered them for ease of disposition:

> 1. The trial court erred in denying Dunbar's post-sentence motion for acquittal regarding the human trafficking charges, as the jury's guilty verdicts on these counts were against the weight and sufficiency of the evidence presented by the Commonwealth at trial.
>
> 2. The trial court erred in denying Dunbar's post-sentence motion for acquittal regarding the prostitution charges, as the jury's guilty verdicts on these counts was against the weight and sufficiency of the evidence presented by the Commonwealth at trial.
>
> 3. The trial court erred in denying Dunbar's post-sentence motion for acquittal regarding the drug charges, as the jury's guilty verdicts on these counts was against the weight and sufficiency of the evidence presented by the Commonwealth at trial.
>
> 4. The trial court erred in denying Dunbar's pre-trial motion to suppress evidence in regards to the illegal drug contraband.
>
> 5. The trial court erred in denying Dunbar's pre-trial motion to quash the two human trafficking charges, since the trial court previously dismissed two involuntary servitude counts through the grand of Habeas Corpus relief; involuntary servitude is an element of human trafficking; therefore, since the involuntary servitude counts were dismissed, Dunbar could not be convicted of human trafficking.

6. The trial court erred in denying Dunbar's motion for a new trial on the basis that the court erred in admitting the introduction through the Commonwealth's digital forensics expert of a number of text messages originating from Dunbar's cell phone as the introduction of said text messages was unauthenticated, extremely prejudicial hearsay, and were entered in violation of this Court's decision in *Commonwealth v. Koch*, 39 A.3d 996 (2011).

7. The trial court abused its discretion by sentencing Dunbar to a sentence that was excessive.

*See* Dunbar's Brief at 7-8.

Before reaching the merits of Dunbar's claims, preliminarily we will address whether any of Dunbar's issues have been waived for failing to comply with Pa.R.A.P. 1925. We begin by examining Dunbar's sufficiency claims. This Court has held that in order for an appellant to preserve a sufficiency claim, the 1925(b) statement must "specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Williams*, 959 A.2d 1252, at 1257 (Pa. Super. 2008).

Here, Dunbar's 1925(b) statement merely provides that "the jury's guilty verdicts on [the human trafficking charges] were against the weight and the sufficiency of the evidence." Dunbar's 1925(b) Statement, 3/28/18, at 1. His other two sufficiency claims regarding the prostitution and drug charges follow this same format. On all three of these issues, Dunbar never states which specific element(s) he believes the evidence failed to establish. As noted above, the 1925(b) statement must demonstrate which element or elements the Commonwealth failed to prove. *See id*. Dunbar's statement

- 4 -

does not meet this threshold of specificity. Therefore, all of his sufficiency claims are waived.

We next examine whether Dunbar has waived issues four and five, relating to his pretrial motions. Dunbar raised these issues in a supplemental statement of matters complained of on appeal. Rule 1925(b) permits the filing of a supplemental statement in two limited circumstances. First, Rule 1925(b)(2) provides that, "*[u]pon application* of the appellant and for *good cause* shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed." Pa.R.A.P. 1925(b)(2) (emphasis added). Second, the Rule also provides, "[i]n extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*." Pa.R.A.P. 1925(b)(2).

Here, there is nothing of record indicating Dunbar ever requested leave from the trial court to file his supplemental statement. Additionally, we note the trial court opinion does not address either of these issues, suggesting that it considered these claims waived. Where an appellant files a supplemental Pa.R.A.P. 1925(b) concise statement without petitioning the court for permission to file such a statement, the additional issues raised in the secondary statement are waived. **See Commonwealth v. Woods**, 909 A.2d 372, 376 (Pa. Super. 2006).

We agree with the trial court's refusal to address these claims. Because Dunbar did not comply with Rule 1925(b) in filing his supplemental statement,

his two pre-trial issues are not properly before us and are waived. Accordingly, we may not address them. *See Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998).

We will now address the merits of Dunbar's remaining claims which he has properly preserved. We begin by considering Dunbar's challenges in issues one, two, and three, to the weight of the evidence supporting his convictions for the human trafficking, prostitution, and drug charges. Our standard of review for a weight of the evidence claim is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

Additionally, this Court has summarized:

> The determination of the weight of the evidence exclusively is within the province of the fact-finder, who may believe all, part, or none of the evidence. A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Ross*, 856 A.2d 93, 99 (Pa. Super. 2004) (citations omitted).

The trial court found no merit to Dunbar's weight claims. *See* Trial Court Opinion, 7/10/18, at 6. In doing so, the trial court summarized both Simms' and Sergeant Martin's testimony, and stated that "after hearing all the evidence which [the jury is] free to believe (all, part, or none), [it] found the Commonwealth's evidence credible and returned a guilty verdict…" *Id.* at 8. The court concluded that "because he jury's verdict was not so contrary to the evidence presented, the verdict does not shock one's sense of justice." *Id.* We agree.

In finding Dunbar guilty of these charges, the jury clearly believed the Commonwealth's testimonial evidence. The Commonwealth presented a multitude of testimony which included two law enforcement officers, an expert witness, two hotel management personnel and Simms, one of the two victims. All of these witnesses presented a breadth of information that supported the charges against Dunbar. Therefore, our review of the record reveals that the jury's verdict does not run so contrary to the evidence that it shocks one sense of justice.

We further note that Dunbar's arguments pertaining to the weight of the evidence actually relate to the sufficiency of the evidence. All three of Dunbar's weight claims focus generally on evidence absent from the record, which he contends the Commonwealth needed to present to establish his

guilt.[2] After reviewing the evidentiary record, we conclude that the evidence presented supports the trial court's conclusion that the evidence presented was not "tenuous, vague and uncertain." **See Ross supra**. The trial court did not abuse its discretion in denying Dunbar's post-trial motion for acquittal. Dunbar's weight claim is without merit.

We next consider Dunbar's sixth issue which challenges to the admission of text message evidence introduced at trial. He advances two theories. First, Dunbar alleges that the text messages were inadmissible hearsay. Second, he argues the Commonwealth did not properly authenticate the texts.

Before examining the merits of Dunbar's claims, we must first determine whether he properly preserved both of these issues for appellate review. "In order to preserve an issue for review, a party must make a timely, specific objection." **Commonwealth v. Brown**, 832 A.2d 1132, 1136 (Pa. Super. 2003). If counsel fails to preserve an issue by **specific** objection, then the issue is waived. **See Commonwealth v. Stetler**, 95 A.3d 864, 869 (Pa. Super. 2013).

The trial court concluded that Dunbar waived the argument that his texts were inadmissible hearsay, because he incorrectly stated the grounds for his objection. The trial court explained that:

> . . . when the Commonwealth asked Expert [Glenn] Bard if the text messages were retrieved from [Dunbar's] cellphones, [Dunbar's] counsel lodged a timely objection.

---

[2] Although Dunbar makes general allegations of missing evidence, he does not make specific claims of insufficiency. **See supra**.

> When probed for the grounds of the objection, Counsel stated: "Your Honor, I am raising a hearsay objection, more specifically authentication." When asked for clarity on his objection (indicating that authenticity and hearsay were distinct objections and needed to be addressed separately) Counsel explained that the basis for the objection was that it was hearsay because "we cannot prove who sent them." Counsel then added that the expert could testify that the text messages were sent from [Dunbar's] cellphones, but not that [Dunbar] sent them.
>
> From this exchange two things become evident. First, based on Counsel's argument, it becomes clear that Counsel's challenge was to the authenticity of the evidence. His objection was based on the authorship of the texts, *i.e.* "could not be established who sent them." Moreover, he conceded that the expert could testify that the texts originated from [Dunbar's] phone, but he could not testify that [Dunbar] authored the texts, which is precisely what [the expert] testified to and abstained from respectively [***sic***]. Second, after being asked to clarify the grounds for his objection, Counsel abandoned whatever hearsay objection he had raised and focused his objection on the authenticity of the texts. Absent from Counsel's argument was that text messages were out of court statements being offered for the truth of the matter asserted.

Trial Court's Opinion, 7/10/18, at 9-10 (citations omitted). We agree with the trial court.

Our review of the record supports the court's description of the discussion that ensued after Dunbar's counsel lodged his objection. There is no indication in the colloquy that Dunbar's counsel was challenging anything but the authorship of the text messages. Counsel stated that "[the expert witness] can prove messages were sent from that phone, but he—he cannot prove that my client is the individual that actually sent them and that is my objection." N.T., 10/25/17, at 39. Dunbar's counsel never hinted that he took

issue with the text messages because they were out of court statements offered to prove the truth of the matter they were asserting, i.e. hearsay. Instead, the grounds of the objection solely related to the authorship of the texts. As such, we conclude that Dunbar has waived his hearsay challenge, but preserved his authentication objection.

Next, we determine whether the trial court erred in admitting text messages that Dunbar claims were not properly authenticated. Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Mosley*, 114 A.3d 1072, 1081 (Pa. Super. 2015). An "[a]buse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth . Bond*, 190 A.3d 664, 667 (Pa. Super. 2018).

Pennsylvania Rule of Evidence 901 provides that the proponent of an item of evidence must introduce sufficient evidence that the matter is what the proponent purports it to be. Pa.R.E. 901(a). Authentication is required prior to the admission such evidence. Dunbar insists no evidence showed he authored the text messages and that the trial court's decision to admit them

violated this Court's decision in **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa. Super. 2011) .[3]

In **Koch I**, this Court held that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person." **Id.** at 1005. Because a cellular phone may not necessarily be used exclusively by the person to whom the phone number is assigned, "circumstantial evidence, which tends to corroborate the identity of the sender, is required." **Id**.

The principles set forth in **Koch** do not create a bright line test, rather, authentication must be determined on a case-by-case basis. **Id**. at 1106. The circumstances in **Koch** are distinct from the facts at bar. In **Koch**, the Commonwealth conceded that the defendant did not author some of the text messages at issue. Further, the Commonwealth proffered no evidence to substantiate that Koch wrote the incriminating messages, and did not produce testimony from people who sent or received any of the texts. **Id**.

Here, the trial court determined that the Commonwealth properly authenticated Dunbar's text messages because corroborating evidence was introduced showing he "was in the vehicle where the phones were found, he had exclusive access to the cellphones, he was the owner of the phones, and

---

[3] In reviewing this Court's decision in **Koch**, our Supreme Court agreed with the analysis that authentication of text messages absent direct evidence, requires some degree of circumstantial evidence indicating authorship. The Supreme Court held that the trial court did not abuse its discretion in finding that the Commonwealth met its authentication burden in **Koch**. **See Commonwealth v. Koch**, 106 A.3d 705 (Pa. 2014).

he communicated with other participants and potential clients, to arrange the transactions charged herein." Trial Court Opinion, 7/10/2018, at 11-12.

Initially, we observe "[a]uthentication generally entails a relatively low burden of proof." **Commonwealth v. Koch**, 106 A.3d 705, 713 (Pa. 2014) ("**Koch II**"). The trial court determined the Commonwealth satisfied this burden. For example, Simms testified that Dunbar used his phone to perpetuate the criminal activity for which Dunbar was charged, such as, arranging the meetings between her and her clients. N.T., 10/24/2017, at 129. An expert witness also testified that Dunbar was the registered user of the phone and that the email address, barshaydunbar00@gmail.com, was connected to it. N.T., 10/25/2017, at 34. The expert further testified that the majority of the texts from Dunbar's phone were being sent to and received from Simms' cellular phone number. **Id**. at 36. For these reasons, we conclude that the trial court did not did not abuse its discretion in determining the Commonwealth met its authentication burden and subsequently admitting the texts into evidence.

Lastly, we consider Dunbar's seventh issue which challenges to the discretionary aspects of his sentence. Dunbar asserts his sentence is excessive, despite the fact his sentence falls within the statutory guidelines.

"Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." **Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa.Super.2015)(citation omitted). To invoke our jurisdiction, we must determine if Dunbar has met the following four criteria:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (citations omitted).

Dunbar has complied with the first three requirements. Dunbar filed a motion for modification of his sentence, he timely appealed, and his brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we need only decide the fourth prong of the test.

As to whether Dunbar's claim presents a substantial question, he avers that the sentence was excessive because the trial court "failed to consider that [he] was gainfully employed prior to his conviction, and that he has several minor children." Dunbar's Brief at 16. Dunbar additionally notes "that his prior serious offense occurred years prior" to the current convictions." *Id*.

We determine the existence of a substantial question on a case-by-case basis. *Swope*, 123 A.3d at 338. An appellant raises a substantial question when he "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Id*.

This Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Id*. at 339 (citation omitted). Thus, we conclude that Dunbar has raised a substantial question for our review, and proceed to address the merits of his claim.

The following principles apply to our substantive review of Dunbar's claim. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009). Rather, we review the trial court's determination for an abuse of discretion. *Id*.

> [A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014).

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "When imposing sentence,

a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Antidormi*, 84 A.3d at 761 (citations and quotation marks omitted).

Dunbar's claim that the trial court failed to consider mitigating factors is belied by the record. "Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). The court held a sentencing hearing after it ordered and reviewed a presentence investigation. Further, the transcript reveals that Dunbar testified to the court that he had a job and children, and had not been in trouble with the law for approximately ten years. *See* N.T. Sentencing, 6/22/18, at 5-6. Before announcing his sentence the court stated that:

> I've taken into consideration the verdict of the jury. I've taken into consideration your presentence investigation. I've taken into consideration the statements what were made in court today, the sentencing code, and the sentencing guidelines.

*Id*. at 9.

Additionally, the trial court indicated that there was a public interest in protecting the community from drugs and protecting women from the type of

treatment Dunbar facilitated through his prostitution ring. **See id**. at 9-10. The Court explained in its 1925(a) opinion that "in weighing [the aforementioned factors], this [c]ourt sought to impose a sentence that balanced society's needs while seeking to impose an appropriate sentence upon [Dunbar]. Trial Court Opinion, 7/10/18, at 4.

Although the trial court did not engage in a lengthy discourse, it appropriately stated the facts and considerations it accounted for in imposing Dunbar's sentence. Based upon the foregoing, we discern no abuse of the trial court's discretion.

In sum, because Dunbar has failed to preserve many of the issues he raises on appeal and those he did preserve are meritless, he is entitled to no relief. For the reasons above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2019