J-A09015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MUSTAFA CRENSHAW, | : | |
| | : | |
| Appellant | : | No. 3590 EDA 2017 |

Appeal from the Judgment of Sentence, June 9, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0006318-2015.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED JUNE 07, 2019**

Mustafa Crenshaw appeals from the judgment of sentence imposed after a jury convicted him of aggravated assault, criminal conspiracy, possession of an instrument of a crime,[1] as well as various firearm violations.  After careful review, we affirm.

Crenshaw and his co-defendant, Mohammed Kamana, were arrested and charged in connection with the April 13, 2015 shooting of Michael Pritchette.[2]  The trial court summarized Pritchette's trial testimony as follows:

> [At trial,] Pritchette testified that he had moved out of Pennsylvania but returned because the Commonwealth

---

[1] 18 Pa.C.S.A. §§ 2702, 903, and 907.

[2] Kamana's surname is actually "Kamara."  **See** No. 3446 EDA 2017.  The jury found him guilty of attempted murder and other crimes.  **Id.**  For consistency, we will refer to Crenshaw's co-defendant as "Kamana."

---

\* Retired Senior Judge assigned to the Superior Court.

notified him that there was a warrant out for him. He stated that he had not wanted to participate in the trial because he was afraid for himself and his family. He identified [Crenshaw] and Kamana, known to him as "Staf" and "Ham," as men he had known for more than five years from around the neighborhood. Pritchette testified that two days before the shooting, he got into an argument with [Crenshaw] and Kamana at his friend "D Rock's" house on Elmwood Avenue. He stated that on April 13, [2015], he walked out of a store with D Rock and headed towards a friend's house so he could get a ride to work when a white Buick pulled up next to him. [Crenshaw] and Kamana exited the vehicle and began fighting with Pritchette. Pritchette testified that he saw [Crenshaw] pass a gun to Kamana. Pritchette stated that he then saw Kamana aim the gun at him so he turned around to run away, and Kamana shot him once in the back. Pritchette testified that a friend of D Rock's drove him to the hospital in a red Mitsubishi. Pritchette stated that once he arrived at the hospital, an ambulance transported him to a different hospital. Pritchette testified that police detectives spoke to him in the hospital and that he refused to tell them who shot him because he was afraid. He stated that he did tell detectives at the hospital that a white Buick pulled up before he was shot. Pritchette testified that later, after warrants were issued for his arrest, the police came to his house and took him in handcuffs to the police station. At that time, he gave another statement and finally told the police the identities of the men who shot him. He testified that he also identified [Crenshaw] and Kamana in a photo array. He stated that he had refused to disclose the shooters' identities prior to the warrants because he was afraid for his safety. He further testified that he had moved out of Pennsylvania because he was concerned for his safety due to his involvement in this matter.

Trial Court Opinion, 6/26/18, at 4-5. The Commonwealth corroborated Pritchette's version of the incident by the testimony from the investigating officers and video surveillance.

That matter went to trial, where the jury found Crenshaw guilty of the aforementioned charges on March 29, 2017. On June 9, 2017, the trial court sentenced Crenshaw to an aggregate sentence of 8 to 16 years of incarceration, plus 10 years of probation. Crenshaw filed post-sentence motions, which were denied. This timely appeal follows. Both the trial court and Crenshaw have complied with Pa.R.A.P. 1925.

Crenshaw raises the following issues for our substantive review:

1. Was the evidence insufficient to sustain the guilty verdict for aggravated assault, where there was insufficient evidence proving Crenshaw had the criminal specific intent to attempt to cause or even recklessly caused Pritchette serious bodily injury, and Crenshaw was not the one who shot Pritchette?

2. Was the evidence insufficient to sustain the guilty verdict for criminal conspiracy where there was insufficient evidence that Crenshaw conspired with the shooter, and at most, Crenshaw was merely present at the scene when Pritchette was shot?

3. Were the verdicts for aggravated assault, criminal conspiracy, PIC and all the VUFA charges against the weight of the evidence as the only identifying evidence tying Crenshaw as one of the offenders came from Pritchette, who gave constantly changing and materially contradictory statements and testimony, which were rendered completely unreliable?

*See* Crenshaw's Brief at 7.

Our standard of review for a challenge to the sufficiency of the evidence requires us to determine whether the evidence admitted at trial, with all reasonable inferences viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish every element of

the convicted offense beyond a reasonable doubt. ***Commonwealth v. Collins***, 703 A.2d 418, 420 (Pa. 1997). Circumstantial evidence must be considered equally with direct evidence, and the Commonwealth may sustain its burden by relying on circumstantial evidence alone. ***Commonwealth v. Davalos***, 779 A.2d 1190, 1193 (Pa. Super. 2001). The Commonwealth's established facts and circumstances need not preclude the possibility of innocence. ***Commonwealth v. Dargan***, 897 A.2d 496, 503 (Pa. Super. 2006). If the evidence allows a fact-finder to reasonably determine that all necessary elements are established, then the evidence will be deemed to support the verdict. ***Davalos***, 779 A.2d at 1193.

We will first address Crenshaw's sufficiency challenge in regards to his conspiracy conviction.

> To prove conspiracy, the trier of fact must find that: 1) the defendant intended to commit or aid in the commission of the criminal act; 2) the defendant entered into an agreement with another to engage in the crime; and 3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators.

***Commonwealth v. Johnson***, 985 A.2d 915, 920 (Pa. 2009).

In support of his sufficiency challenge, Crenshaw argues:

> [Crenshaw] was merely present and did not direct anyone to shoot the complainant. The lower court points out in its Opinion, that the complainant had an argument with the co-defendant and [Crenshaw], a few days prior to the shooting. [Crenshaw] concedes that this could serve as evidence of a

- 4 -

motive to engage in later violence. However, [Crenshaw] argues that this coupled with a mere passing of a firearm, does not rise to the level of an agreement to commit a shooting or that the passing of a firearm [constituted a] significant overt act.

Crenshaw's Brief at 19-20. In addition, Crenshaw further notes that Pritchette originally told police that he was a victim of a drive-by shooting. Finally, Crenshaw emphasizes that Pritchette did not mention that Crenshaw passed a gun to Kamana in his statement to police and his grand jury testimony.

In concluding Crenshaw conspired with Kamana to harm Pritchette, the court focused on the particular circumstances and conduct in this case. The trial court reasoned:

The record supports the jury's finding that [Crenshaw] entered into a conspiracy with Kamana to shoot Pritchette. Pritchette testified that he, [Crenshaw], and Kamana had argued at D Rock's house on Elmwood Avenue a couple days prior to the shooting. As Pritchette walked down Elmwood Avenue with D Rock two days later, Kamana and [Crenshaw] drove up in a white Buick, exited the vehicle and began to fight with Pritchette. Pritchette then saw [Crenshaw] pull out a gun and pass it to Kamana, who then shot Pritchette in the back as he turned to run away. These facts demonstrate that [Crenshaw] and Kamana had formed a plan to shoot Pritchette and worked together to effectuate this goal, as evidenced by the fact that [Crenshaw] and Kamana arrived at the scene of the shooting together in the white Buick and [Crenshaw] passed the gun to Kamana so that he could shoot Pritchette. Indeed, all four elements of conspiracy were proven: first, [Crenshaw] and Kamana were known associates as they had argued with Pritchette two days earlier at D Rock's house; second and third, [Crenshaw] had knowledge of the crime as he was present during the shooting; and last, [Crenshaw] actively participated in the commission of the crime as he initially possessed the firearm and then passed it to Kamana so he

could shoot Pritchette. The totality of the evidence supports [Crenshaw's criminal conspiracy conviction[.]

Trial Court Opinion, 6/26/18, at 13-14.

Our review of the record supports the trial court's conclusion. Both co-codefendants, Crenshaw and Kamana both argued with Pritchette, jointly approached and attacked him, and Crenshaw provided Kamana with the gun that he shot Pritchette with. Crenshaw's argument regarding Pritchette's inconsistent statements during the investigation of this case goes to the weight rather than the sufficiency of his testimony. Thus, Crenshaw's sufficiency challenge to his conspiracy conviction fails.

Next, we turn to Crenshaw's second issue, which challenges the sufficiency of his aggravated assault conviction.

An individual is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." **Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa. Super. 2013) (citation omitted). "A person acts intentionally with respect to a material aspect of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" **Commonwealth v. Jackson**, 955 A.2d 441, 446 (Pa. Super. 2008). The General Assembly has defined serious bodily injury

as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member." 18 Pa.C.S.A. § 2301.

Crenshaw argues that he could not be convicted for aggravated assault because he was not the shooter. He argues that he "did not direct the co-defendant to shoot the complainant. [He] made no command nor made any non-verbal command for [Kamana] to shoot [Pritchette]." Crenshaw's Brief at 16-17. Crenshaw would have this Court conclude that "he was merely present" and that "handing a firearm to another . . . does not rise to the level of aggravated assault." *Id*.

The trial court provided the following reasons in concluding the Commonwealth provided sufficient evidence to prove Crenshaw was guilty of aggravated assault:

> The evidence shows that [Crenshaw] and Kamana planned to confront Pritchette and shoot him. Together, they drove up in a car, got out, and approached Pritchette on the street. [Crenshaw] handed the gun to Kamana just prior to Kamana shooting Pritchette in the back as he attempted to run away. As a result of his gunshot wound, Pritchette was hospitalized for three days. There is no question that a gunshot to the back constituted an attempt to cause or causes serious bodily injury, as any gunshot "creates a substantial risk of death or [can cause] serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Even though [Crenshaw] did not personally pull the trigger, [Crenshaw] passing the gun to Kamana was a "substantial step toward perpetrating a serious bodily injury upon another." Thus, there was sufficient evidence adduced at trial to support the jury's finding that [Crenshaw] was guilty of aggravated assault.

Trial Court Opinion, 6/26/18, at 12.

It appears that the trial court concluded that Crenshaw was liable for aggravated assault under 18 Pa.C.S.A. 2702, itself and upon the principle of conspiratorial liability. We find that Crenshaw's conviction was proper under the theory of conspiratorial liability and as a principal actor who attempted to cause serious bodily injury. We will address each of these theories that the conviction rests on in turn.

Conspiratorial liability, "permits vicarious criminal liability for the substantive offenses committed by other members of the conspiracy that are undertaken in furtherance of the conspiracy. *Commonwealth v. Chambers*, 188 A.3d 400, 405 (Pa. 2018). The trial court found that Crenshaw was criminally liable for the acts of his co-conspirator which were undertaken in furtherance of the crime. Ultimately, it was the pre-existing quarrel that Crenshaw and Kamana had with Pritchette and their subsequent joint attack on him that led the trial court to conclude that a conspiracy had been formed between them to effectuate a shared intent to assault. Such evidence established a shared criminal intent, making Crenshaw vicariously liable for the shooting.

As for a principal actor, the evidence of record supports the court's finding that Crenshaw himself attempted to cause serious bodily injury to Pritchette. The circumstantial evidence demonstrates that Crenshaw possessed the required specific intent. One could infer that Crenshaw's conscious objective was to shoot Pritchette because the facts demonstrate

- 8 -

that (1) Crenshaw and Mustafa had an argument with Pritchette several days prior to the shooting, (2) immediately upon approaching Pritchette, they raised their fists and began fighting him, and (3) Crenshaw handed the gun to Mustafa during the fight. N.T. 3/23/17, 131-40. As the trial court noted, Crenshaw handing the gun over to Mustafa was a substantial step toward perpetrating the shooting. We agree with the assessment and therefore find the evidence was sufficient to convict Crenshaw of aggravated assault.

In his third issue, Crenshaw challenges the weight of the evidence supporting his convictions. When reviewing a challenge to the weight of the evidence, our standard of review is as follows: This Court has summarized:

> The determination of the weight of the evidence exclusively is within the province of the fact-finder, who may believe all, part, or none of the evidence. A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Ross***, 856 A.2d 93, 99 (Pa. Super. 2009) (citations omitted). Absent an abuse of discretion, the trial court's decision will not be disturbed. ***See Commonwealth v. Griffin***, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007) (citation omitted).

The trial court found no merit to Crenshaw's weight claim. ***See*** Trial Court Opinion, 6/26/18, at 14-15. Considering the testimony provided by the Commonwealth, the trial court reasoned:

> In the case at bar, the jury properly assessed the evidence presented at trial and based its verdict upon that evidence. The jury, as fact-finder, was free to believe all, part or none of the evidence presented, and […] its conclusion should not be disturbed unless it "shock's one's sense of justice." That is not the case here. During the trial, the jury was able to observe the demeanor of victim Pritchette and eyewitness Bivens, and found each of them to be credible. The jury also viewed the surveillance video from the corner beauty store, which depicted two males emerging from a white vehicle, a scuffle ensuing, a man running away, and a SEPTA bus driving through [the] intersection.

***Id.***

Crenshaw argues the verdict was against the weight of the evidence because "the only person tying [him] to the scene of the shooting was [Pritchette] whose story changed in material ways." Crenshaw's Brief at 21. However, Pritchette explained he changed his story because he feared retaliation from the defendants if he testified truthfully. It was within the jury's province to reconcile these inconsistencies in Pritchette's testimony. Because the evidence was not "tenuous, vague, and uncertain" the trial court did not abuse its discretion in finding the verdict was not against the weight of the evidence. ***Ross***, 856 A.2d at 99. Thus, Crenshaw's weight claim is without merit.

In sum, the evidence presented by the Commonwealth demonstrates that Crenshaw's convictions were supported by sufficient evidence, and we

find the trial court did not abuse its discretion on the weight claim. We therefore affirm Crenshaw's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/19