J-S30018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MUHAMMAD A. JOHNSON, | : | |
| | : | |
| Appellant. | : | No. 861 EDA 2018 |

Appeal from the Judgment of Sentence, November 17, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0009984-2016.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED AUGUST 19, 2019**

Muhammad Johnson appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder and related charges.[1]  We affirm.

The trial court summarized the evidence presented at trial as follows:

> On August 31, 2006, in the Mantua section of Philadelphia, at approximately 8:00 P.M., a sleeping Jymir Burbage was awoken by a shouting quarrel between his father, decedent Pierre Russell Buddy Burbage, and [Johnson's] girlfriend. The two men, [Johnson and Burbage], were roommates. Burbage accused [Johnson's] girlfriend, Amira Harris, of playing her music too loud and yelled at her to lower the volume.  Immediately following the argument, Harris contacted Johnson, informed him of the confrontation and told him to come home.  Afterwords, Burbage entered the room where his minor son, Jymir, was sleeping and told him to "grab the keys and turn off the light," and they proceeded

---

[1] 18 Pa.C.S.A § 2502(a).

to leave the apartment. As they exited the apartment, and walked down the stairs, Harris trailed behind them. Burbage and his son proceeded to the nearby Mantua Recreation Center.

While Burbage and his son were standing on the porch of the Mantua Recreation Center, Johnson arrived, approximately thirty minutes later, walked up to [Burbage] and said "[a]re we really going to do this P?" (referring to [Burbage]). Burbage responded, "[y]ou already pulled out the ratchet." (referring to a gun). The two men started arguing and Johnson shot [Burbage] three times from a distance of approximately six feet, and then ran away from the crime scene. Amira Harris, a witness to the shooting who testified that Johnson was the shooter, also ran away. At trial, after taking the oath, Jymir positively identified Johnson, by point of finger, as the person who shot his father.

Additionally, the Mantua Recreation Center had surveillance cameras pointed in the direction of the crime scene, so large portions of the incident were captured on video. At trial, Detective Thorsten Lucke presented a compilation video of various camera angles taken from surveillance footage that depicted the homicide. The video was also shown during the examination of Amira Harris who identified [Johnson] on the surveillance footage.

Crime Scene Officer Gregory Yatcilla testified that three fired cartridge casings and a copper fragment were recovered from the scene. Dr. Lindsay Simon, the assistant medical examiner who conducted the autopsy, testified that the cause of death was multiple gunshot wounds. The first bullet struck [Brubage's] right chest, piercing his liver, aorta, and lungs and would have independently been nearly instantly fatal. In addition, Dr. Simon also testified that the manner of death was homicide.

Trial Court Opinion, 7/12/18, at 2-3 (citations omitted).

After hearing the above evidence, the jury convicted Johnson of first-degree murder and related charges. Thereafter, the trial court imposed an aggregate sentence of life in prison without the possibility of parole. The trial

court denied Johnson's timely filed post-sentence motion. This appeal followed. Both Johnson and the trial court have complied with Pa.R.A.P. 1925.

Johnson raises three issues on appeal:

I.   Should [Johnson] be awarded an arrest of judgment on murder in the first degree and all related charges where, as here, the evidence is insufficient to sustain the verdict?

II.  Should [Johnson] be awarded a new trial on the charge of murder in the first degree where, as here, the greater weight of the evidence does not make out the crimes charged?

III. Should [Johnson] be awarded a new trial where, as here, the prosecutor engaged in gross misconduct when vouching for the evidence.

Johnson's Brief at 3 (excess capitalization omitted). We will address the issues in the order presented.

In his first issue, Johnson challenges the sufficiency of the evidence supporting his convictions. Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the

- 3 -

above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard or review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

Although Johnson challenges the sufficiency of the evidence supporting all of his convictions, his supporting argument is limited to the first-degree murder conviction. Thus, we will limit our consideration of this issue accordingly.

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). An "intentional killing" is defined as a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). Our case law has held in order for an individual to be convicted of first-degree murder, "the Commonwealth must prove: 1) that a human being was unlawfully killed; 2) that the defendant perpetrated the killing; and 3) that the defendant acted with malice and a specific intent to kill." *Commonweath v. Stiles*, 143 A.3d 968, 982 n.7 (Pa. Super. 2016) (citation omitted). This Court has also stated the third element to include proof that "the killing was willful, deliberate, and premeditated." *Commonwealth v. Dowling*, 883 A.2d 570, 573 (Pa. Super. 2005).

- 4 -

The trial court found no merit to Johnson's sufficiency challenge:

> Here, the evidence shows that [Johnson] committed first-degree murder. Certainly, [his] conduct was the product of premeditation and deliberation. **See** [**Commonwealth v. Fisher**, 769 A.2d 1116, 1124 (Pa. 2001). (holding that "[t]he period of reflection necessary to constitute premeditation may be very brief; in fact, the design to kill can be formulated in a fraction of a second"). [Johnson's] conduct alone, shooting the unarmed victim in a vital part of his body from six feet away, is sufficient evidence of malice and intent to kill to sustain a verdict of murder in the first degree. **See Commonwealth v. Holley**, 945 A.2d 241 (Pa. Super. 2008) (holding that a defendant's intent can be proven by direct or circumstantial evidence). Indeed, "[s]pecific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." **Commonwealth v. Padilla**, 80 A.3d 1238, 1244 (Pa. 2013), *cert. denied*, 134 S.Ct. 2725 (2014). **See Commonwealth v. Bond**, 652 A.2d 308, 311 (Pa. 1995) (noting that a gun is "clearly a deadly weapon"); **Commonwealth v. Solano**, 906 A.2d 1180, 1192 (Pa. 2006), *cert. denied*, 550 U.S. 938 (2007) (noting that one of the factors that "weighs in on the element of intent" is "the precise distance from which the bullets were fired"); **Commonwealth v. Rodgers**, 456 A.2d 1352, 1354 ([Pa.] 1983) (ruling that a shotgun fired within a short range of the victim "establishes specific intent to take life"); **Commonwealth v. Davis**, 421 A.2d 179 (Pa. 1980) (holding the Commonwealth established specific intent to kill through the evidence that the defendant shot unarmed victim); **Commonwealth v. Chine**, 40 A.3d 1239, 1242 (Pa. Super. 2012) (holding that evidence of a defendant shooting an "unsuspecting, unarmed" victim clearly indicated specific intent to kill and malice).

Trial Court Opinion, 7/12/18, at 6-7. Our review of the record amply supports the trial court's conclusions.

Johnson's claims to the contrary are unavailing. As noted above, he claims that the evidence failed to identify him as the perpetrator and failed to

- 5 -

establish the specific intent to kill. In his brief, Johnson provides no supporting argument regarding his identity as the perpetrator.[2] Thus, he abandoned this argument. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super 2007) (stating "[t]his court will not act as counsel and will not develop arguments on behalf of an appellant").

With regard to the Commonwealth's alleged failure to establish premeditation or a specific intent to kill, Johnson argues:

> In simple terms, the evidence does not establish Murder in the First Degree. The facts are straight-forward. Miss Amira Harris said that she called her boyfriend, [Johnson] and explained to him how the victim had made a fuss over some loud noise. However, what she was really saying was that she agitated [Johnson] and his testosterone and maleness and implored him to come over to the house to adjust the wrong that was so unrighteously [sic] foisted upon her. [Johnson] shows up and perhaps not to the surprise of any reading the transcript, shoots and kills the victim. The undersigned is not claiming that the shooter was justified nor should have been undertaken [sic]. Rather, this counsel is merely saying that the facts do not make out malice nor premeditation.
>
> ***
>
> The defense here, takes the position that [Johnson] acted without malice because of the passion and provocation generated not only by [Burbage] who made a big deal over some loud noise but also by Miss Harris who injected her femininity into the ongoing matter and in essence, challenged her boyfriend to "do something about it."
>
> ***

_____

[2] This is understandable, since two eyewitnesses identified him as the perpetrator, and he could also be seen on surveillance video of the incident.

> The record does not establish that [Johnson] and [Burbage] were "beefing" on the day in question or any other day and the record really does establish that [Johnson] came over to the girlfriend's house in an excited state and reacted to external stimuli which caused him to lose his temper and act. [Johnson], while acting most inappropriately did not lay in wait or hunt [Burbage] down. It was an explosion on the street. It was a tragic ending. But, it was not Murder in the First Degree. [Johnson] should be awarded an Arrest of Judgment.

Johnson's Brief at 7-8.

We disagree. Although Johnson's counsel provides his interpretation of the "facts" presented, he does not develop the claim by citing or discussing any of Miss Harris' actual testimony, or the testimony from any other Commonwealth witness.[3] **See Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).

Moreover, as noted by the trial court premeditation and/or a specific intent to kill can be in an instant. **See Commonwealth v. Clemons**, 2019 WL 286565 (Pa. 2019) (explaining that the "law does not require a lengthy period of premeditation to support a first-degree murder conviction; indeed, the design to kill can be formulated in a fraction of a second").

Finally, it is well settled that a "[s]pecific intent to kill as well as malice can be inferred in a trial for first-degree murder from the use of a deadly weapon upon a vital part of the victim's body." **Commonwealth v. Thomas**,

---

[3] Johnson did not testify and provide no other witnesses in his defense.

54 A.3d 332, 335-36 (Pa. 2012). As noted by the trial court, *supra*, the record establishes that the shots fired by Johnson struck vital organs within Burbage's body and that death was almost instantaneous. Thus, for all these reasons, Johnson's first issue on appeal fails.

In his second issue, Johnson contends, "the greater weight of the evidence only established that [he] was riled up by his girlfriend and the mouth of the victim. . . . [Johnson] lost his cool and opened fire. . . . From the record, one can only engage in speculation, conjecture and surmise as to whether [Johnson] had specific intent to kill or engaged in premeditation." Johnson's Brief at 9-11.

In making his argument, Johnson conflates a challenge to the sufficiency of the evidence with a claim challenging the weight of the evidence. As our Supreme Court has explained:

> [I]t is necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the

- 8 -

laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

Nevertheless, we note that Johnson preserved a weight claim in his post-sentence motion, *see* Pa.R.Crim.P. 607, and the trial court addressed it as such in its Rule 1925(a) opinion. Thus, despite Johnson's phrasing of his second issue, we will address it as a challenge to the weight of the evidence.

"[A]ppellate review of a weight of the evidence claim normally involves examining the trial court's exercise of discretion in its review of the fact-finder's determinations[.]" *Commonwealth v. Ross*, 856 A.2d 93, 99 (Pa. Super. 2004) (citing *Widmer*, *supra*). In *Widmer*, our Supreme Court further explained:

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he [or she] were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are

- 9 -

so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations omitted). Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence received as to shock one's sense of justice such that right must be given another opportunity to prevail. *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa. Super. 1997).

In this case, the trial court concluded that Johnson failed to specify how his guilty verdicts were against the weight of the evidence. The court explained:

> [Johnson] claims that the verdict was against the weight of the evidence as it was based on suspicion, conjecture and surmise. [He] does not make any specific allegations about what causes the verdict to be against the weight of the evidence. Indeed, despite his contentions, there were two eyewitnesses and video evidence, evidence that goes far beyond suspicion, conjecture and surmise. Thus, it cannot be said that the verdict herein was so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 7/2/18, at 10.

Upon review, we conclude that the trial court did not abuse its discretion when it denied Johnson's weight claim. *Ross*, *supra*. As he did below, Johnson makes no specific weight claims in his brief. Indeed, in making his argument, he relies on a case involving a challenge to the *sufficiency* of the evidence. *See* Johnson's Brief at 10 (quoting *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993)). Thus, because we discern no abuse of discretion

in the trial court's rejection of his weight claim, we dismiss as meritless Johnson's second issue on appeal.

Johnson's third issue involves a claim of prosecutorial misconduct. Our standard of review is well settled:

> [P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. . . . In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion. When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark . . . constitutes reversible error.

*Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citations omitted). "Prosecutorial misconduct, however, will not be found where the comments were based on evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. 2005) (citation omitted). In order to evaluate whether comments were improper, we must look to the context in which they were made. *Id.* Finally, the prosecutor's comments may be reviewed as a fair response to defense counsel's closing remarks. *Commonwealth v. Johnson*, 179 A.3d 110, 1122 (Pa. Super. 2018).

In his closing, defense counsel discussed the various items of evidence introduced by the Commonwealth, including the testimony of Burbage's young son and Ms. Harris. Counsel stressed to the jury that "the most important

thing you're going to have to decide is what we call credibility or believability."

N.T., Trial (Jury), 11/17/17, at 62. Pertinent to Johnson's third issue, defense

counsel argued:

> Let's take a look at Amira Harris, if we may.
>
> 17 years-old at the time. Although, if you recall when I asked her [a] question about her age, she had difficulty remembering, "Was I 17 or 18?" She wasn't even sure.
>
> Do you remember how I told you to watch in addition to listening? She was a perfect example of what I was referring to.
>
> You will recall the way she was combative, antagonistic, confrontational. It seemed like almost every question that I asked she displayed one or more of these characteristics.
>
> Why? Ask yourselves why. Did I ask her questions any differently that the [prosecutor] asked her? What was she trying to accomplish by this display of attitude and behavior?
>
> ***
>
> You saw her body movements. She would stay back in the chair, look around, look down. All of these things, I submit, ladies and gentlemen, are telltale factors that can lead you to believe that this is a person who's not being truthful.
>
> What you have to decide is whether or not to believe what she had to say as well as the way she said them, the way she handled herself on the stand.

*Id.* at 72-73. Defense counsel then highlighted what he perceived to be

inconsistencies in her testimony and later stated, "I submit [Ms. Harris] is

about as worthy of belief as elephants flying." *Id.* at 80.

In her closing, the prosecutor addressed defense counsel's above discussion about Ms. Harris' testimony and her demeanor on the witness stand. She stated:

> You also have Ms. Amira Harris, where defense wants you to focus on her attitude during cross-examination instead of the substance of what she said what happened, but, yet, if you paid close attention to his summation, the defense concedes that she was in the apartment that night, she got in an argument with [Burbage] and that she called Muhammad to come home. Muhammad is established to be [Johnson,] her boyfriend.
>
> Everything she told us is the truth, but don't believe her because she has an attitude with [defense] counsel.

N.T., Trial (Jury), 11/17/17, at 98. At this point, defense counsel objected, and the trial court overruled the objection.

The prosecutor then focused on Ms. Harris' demeanor on the stand and offered reasons for her body movements, then continued:

> Members of the jury, I ask you to look at [Ms. Harris] as the real person she is and look at what she has gone through and had to experience in order to get to this point and yet when she gave her statement at the preliminary hearing and today, time and time again she has told what she saw happen that night.
>
> Counsel calls her a liar. What could possibly be this girl's motive? Common sense tells us we only lie when we have something to gain from it usually. What did she gain? The person she loved, the person she lived with it taken away from her, the person who was supposed to take care of her, gone.
>
>                         \*\*\*
>
> Yet, despite that she came out strong.
>
> She told the truth about what happened - -

- 13 -

N.T., Trial (Jury), 11/17/17, at 100-01. Defense counsel again objected, and this time the trial court sustained the objection.

The prosecutor then went on to explain to the jury how other evidence presented by the Commonwealth corroborated Ms. Harris' testimony. In her concluding remarks, the prosecutor stated:

> As I stated and as I believe has been presented to you through witness after witness, after witness, after witness, the evidence in this case is overwhelming. We just don't have two individuals with no motive to put [Johnson] in this situation other than the fact that it's the truth - -

*Id.* at 106. At this point, defense counsel objected, and the trial court sustained the objection.

Following the prosecutor's closing, and after the jury had left the courtroom, defense counsel moved for a mistrial "based upon each of the objections that [he] interposed to the commentary made by the Commonwealth during the course of the closing argument." *Id.* at 109. When asked to be more specific, defense counsel referred to the prosecutor's statements regarding the truth of Ms. Harris' testimony, and stated that the "inappropriate commentary" was intended to "arouse or inflame the passions of the jury." *Id.* at 110. The prosecutor informed the trial court that her argument regarding Ms. Harris' truthfulness was said in the context that: 1) various aspects of her testimony were not challenged by the defense; and 2) her claim regarding no motive to fabricate was a fair response to defense counsel's closing. *Id.* at 111.

After hearing their positions, the trial court informed defense counsel that it would instruct the jury to disregard the prosecutor's "contention that the witnesses were truthful. That's their decision." N.T., Trial (Jury), 11/17/17, at 112. The court further stated, "With regards to your objection to [the prosecutor's] argument regarding motive to fabricate and twisting your words, I think that's fair response." *Id.* The trial court then denied Johnson's motion for mistrial and recessed for lunch.

Once trial resumed, the trial court gave its charge to the jury. As part of its opening remarks the trial court addressed the basis for which Johnson had moved for a mistrial:

> It is your responsibility as fact-finders to consider all the evidence that you believe material in deliberating upon your verdict.
>
> To that end, you must disregard references to [Johnson] staring, at the witness, Amira Harris, as she testified.
>
> Further, whether or not a witness is truthful is for you to decide.

*Id.* at 117.

In rejecting Johnson's claim that the prosecutor committed misconduct when she vouched for Ms. Harris' testimony, the trial court stated:

> Here, the prosecutor simply argued that defense counsel did not challenge [Ms. Harris'] statements during her testimony, but rather [defense counsel] challenged her attitude on cross-examination. This does not constitute vouching for the witness's credibility. Nevertheless, two of defense counsel's objections were sustained. Indeed, this court gave a limiting instruction on this issue, stating "Further, whether or not a witness is truthful is for you to decide. In

light of these instructions, [Johnson] is unable to prove prejudice.  This claim is meritless.

Trial Court Opinion, 11/17/17, at 12 (citations omitted).

Our review supports the trial court's conclusions.  In his brief, Johnson, without citation, maintains, "It is Horn Book law that a prosecutor may not vouch for the alleged truth telling of his witness.  Yet, the prosecutor in this case violated that holding."  Johnson's Brief at 11.  After discussing the prosecutor's discussion of the truthfulness of Ms. Harris' testimony despite his repeated objections, Johnson asserts:

> In short, the prosecutor took a relatively weak case of Murder in the First Degree and attempted to make it much stronger by interjecting [her] personal opinion and beliefs for the jury's consideration.  That was grossly improper. There was prejudice as the jury now had to consider not only the evidence but the prosecutor's person view of the evidence.  For all those reasons, a new trial is required.

*Id.* at 13.  We disagree.

In making the above argument, Johnson does not acknowledge the trial court's limiting instruction.  It is well settled, that juries are presumed to follow the instructions of the trial court.  *See Commonwealth v. Faurelus*, 147 A.3d 905, 915 (Pa. Super. 2016).

Moreover, we agree with the trial court that, in making the challenged comments, the prosecutor did not vouch for Ms. Harris' credibility.  As this Court has recently summarized:

> It is axiomatic that vouching is a form of prosecutorial misconduct, occurring when a prosecutor places the government's prestige behind a witness through personal

assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the wtiness's testimony. Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1121 (Pa. Super. 2018) (citations omitted). In *Commonwealth v. Judy*, this Court further stressed:

It is well settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility. Thus, proper examination by the [prosecutor] in closing requires review of the arguments advanced by the defense in the defense summation.

*Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (citation omitted).

Here, the prosecutor's comments about the "truthfulness" of Ms. Harris' testimony, did not amount to the Commonwealth vouching for her credibility. In making these comments, "the prosecutor did not interject her personal belief" as to Ms. Harris' veracity, but "simply commented thereon, as she was permitted to do." *Johnson*, 179 A.3d at 1121. Moreover, the challenged comments were not based upon evidence *dehors* the record; the prosecutor repeatedly explained why Ms. Harris' testimony was corroborated by other evidence presented by the Commonwealth. *See Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (explaining while it is improper for prosecutor to offer a personal opinion as to the defendant's guilt or credibility of a witness,

it is entirely proper for her to summarize the evidence presented, to offer reasonable deductions and inferences therefrom, and to argue that the evidence establishes the defendant's guilt). Finally, like the trial court, we view the prosecutor's challenged comments as a proper response to defense counsel challenging Ms. Harris' credibility. Since we discern no abuse of discretion by the trial court, Johnson's third issue fails.

In sum, because all three issues raised by Johnson are meritless, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19